UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD L. WILBORN<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS<br><br>　　　　　　　　　　Defendant. | Case No.:　20cv1981-LAB (BGS)<br><br>**ORDER:**<br><br>**(1) DENYING EX-PARTE MOTION TO FILE SUR-REPLY [DKT. 49]; AND**<br><br>**(2) GRANTING MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [Dkt. 42]** |

　　　Plaintiff Harold L. Wilborn, proceeding *pro se*, is a former employee of the U.S. Custom and Border Patrol law enforcement agency ("CBP"). He brings this suit against the Secretary of the Department of Homeland Security, Defendant Alejandro Mayorkas ("Defendant" or "Secretary Mayorkas"), for alleged violations of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution and for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). Wilborn claims that during his tenure with CBP, he was subjected to denials of due process, social discrimination, hostile work environment, retaliation, and constructive discharge.

On January 20, 2021, this Court granted Defendant's unopposed motion to dismiss Wilborn's original Complaint. (Dkt. 9). Following leave to amend, Wilborn filed a First Amended Complaint ("FAC"), realleging largely the same deficient and conclusory allegations included in his initial pleadings. (Dkt. 28, FAC). On June 7, 2021, Defendant filed the instant motion to dismiss the FAC, arguing that Defendant has sovereign immunity with respect to Wilborn's constitutional claims and challenging the sufficiency of Wilborn's vaguely-pled Title VII claims. (Dkt. 42). For the reasons set forth herein, the Court **DENIES** Wilborn's *ex parte* motion to file a sur-reply (Dkt. 49), and **GRANTS** Defendant's Motion to Dismiss the FAC (Dkt. 42).

## I.  BACKGROUND

Wilborn is a U.S. Navy veteran and was formerly employed by CBP for approximately twenty-nine years. (FAC ¶ 42). His last position at CBP was as Supervisory Law Enforcement Communications Assistant. (*Id.*, Ex. 1 at 3). In 2010, Wilborn was suspended by CBP for five days for engaging in allegedly unprofessional conduct, namely making an allegedly "aggressive threat" to a supervisor. (*Id.*, Ex. 4 at 3). This suspension was later overturned by an Equal Employment Opportunity Administrative Judge ("Administrative Judge") in August 2013 ("EEO Decision"), who determined that the suspension was made in retaliation for Wilborn's protected activity—namely, expressing his intention to file suit due to a hostile work environment. (*Id.*, Ex. 4 at 2–3). In deeming Wilborn's conduct protected activity, the Administrative Judge ordered that backpay and compensatory damages be awarded to Wilborn, all evidence of the suspension be expunged from CBP records, and training on retaliatory conduct be provided to all managers at the facility. (*Id.*). The Administrative Judge's decision was appealed and ultimately affirmed in May 2015. (*Id.*, Ex. 13 at 6).

Wilborn also alleges various other adverse actions taken against him. He claims that, as a "Negro American," he was "pass[ed] over [ ] for promotions in

favor of white male employees . . . with less experience" five different times. (FAC ¶¶ 29–30). In September 2013, Wilborn, who'd been assigned to work the midnight shift for 14 years, was reassigned to the day shift in what he claims is retaliation for the favorable EEO Decision issued just a month prior. (*Id.* ¶ 85). In October 2013, Wilborn's superior, Raul Stamp, stated that Wilborn "should stop acting like a pussy and grow a set of balls." (*Id.* ¶ 86). Then, in October 2014, Assistant Chief Patrol Agent Kathleen Scudder ("Agent Scudder") issued a letter proposing that Wilborn be suspended for 10 days due to his "lack of candor" relating to a scheduling incident with one of Wilborn's subordinates. (*Id.*, Ex. 10 at 1–2). That same month, Wilborn was placed on an Employee Proficiency Plan ("EPP"). (FAC ¶¶ 17–19). He claims that other "similarly situated Caucasian employees" were not disciplined in the same way for such conduct. (*Id.* ¶ 89). The 10-day suspension proposal was ultimately reduced to a one-day suspension, set to be served on February 5, 2021. (*Id.*, Ex. 12). However, because Wilborn retired on January 31, 2015, he never served this suspension. (FAC ¶ 46).

On October 7, 2020, Wilborn commenced this action against the former Secretary of the Department of Homeland Security, Chad Wolf. (Dkt. 1). The original Complaint, though largely unclear as to the alleged causes of action, alluded to claims for violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"); discrimination claims based on race, age, and disability; and claims for hostile work environment, retaliation, and constructive discharge. (*Id.*). Defendant filed a motion to dismiss the Complaint, (Dkt. 5), but Wilborn failed to file anything in response and the motion was granted, (Dkt. 9). Following leave to amend, on April 28, 2021, Wilborn filed his FAC, raising new constitutional due process claims, and realleging claims for racial discrimination, hostile work environment, retaliation, and constructive discharge. Defendant's present motion to dismiss challenges the FAC on grounds of sovereign immunity and because Wilborn's claims are factually and legally insufficient. (Dkt. 42).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS[1]

### A. Fourth, Fifth, and Fourteenth Amendment Claims

The FAC doesn't delineate Wilborn's different causes of action, but it

---

[1] In response to Defendant's instant motion and without first obtaining leave of Court to do so, Wilborn filed two opposition briefs in violation of CivLR 7.1(e). (*See*

appears that Wilborn is attempting to bring claims under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. He alleges that CBP violated his constitutional right of due process by suspending him and placing him on an Employee Proficiency Plan in October 2014, using "standards that [ ] invite[] arbitrary enforcement of that punishment" without giving him "justice and fair notice of [CBP's] punishments." (FAC ¶¶ 17, 22–23). Wilborn names Secretary Mayorkas, the current Secretary of the Department of Homeland Security, as the only defendant in this case, and though it appears this suit is brought against the United States or Secretary Mayorkas in his official capacity, Wilborn's repeated citations to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), suggest that his constitutional claims also extend to Secretary Mayorkas in his personal capacity.

      The Court lacks subject matter jurisdiction over Wilborn's constitutional claims because the United States has not waived its sovereign immunity. "It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan,* 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 589–591 (1941)). A suit for damages against federal officers or employees "in their official capacity is essentially a suit against the United States," and is therefore also barred by sovereign immunity absent statutory consent. *Gilbert v. DaGrossa,* 756 F.2d 1455, 1458 (9th Cir. 1985). Wilborn is suing Secretary

---

Dkt. 44, 45). Wilborn now requests that the Court grant him leave to file a sur-reply to Defendant's Reply In Support of its Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. 49). Wilborn's request is **DENIED**, as the Court finds that further briefing in this matter is both unnecessary and would result in undue delay. For purposes of this Order, the Court considers only the parties' briefings currently on file and will not consider Wilborn's proposed sur-reply in deciding the issues.

Mayorkas in his official capacity as the Secretary of the Department of Homeland Security, yet he fails to identify a waiver of sovereign immunity authorizing this action against the United States. *See Arnsberg v. United States,* 757 F.2d 971, 980 (9th Cir.1984) (holding plaintiff's damages claim for violation of his Fourth Amendment rights against the United States was barred by sovereign immunity). Therefore, Wilborn's constitutional claims against the United States or Secretary Mayorkas in his official capacity are barred by the doctrine of sovereign immunity. *See id.; Holloman v. Watt*, 708 F.2d 1399, 1401–02 (9th Cir. 1983).

Any attempt to bring this suit against Secretary Mayorkas in his personal capacity is likewise misplaced. In *Bivens*, the Supreme Court established an implied private right of action for tortious deprivation of constitutional rights against federal officials in their personal capacity. *Bivens*, 403 U.S. at 389. However, a *Bivens* remedy will generally not be available "if there is an alternative remedial structure present in a certain case," which "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017). Here, an alternative remedy is available through the Civil Service Reform Act ("CSRA"), which precludes Wilborn from bringing a private cause of action against Secretary Mayorkas. *See Wilborn v. Johnson*, 592 F. App'x 571 (9th Cir. 2015) (quoting *Saul v. United States,* 928 F.2d 829, 843 (9th Cir.1991)) ("The district court properly dismissed Wilborn's First and Fifth Amendment claims because the Civil Service Reform Act precludes him from 'seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a *Bivens* action for damages.'"). The CSRA limits federal employees challenging their supervisors' "prohibited personnel practices" to an administrative remedial system. If the conduct an employee challenges falls within the scope of the CSRA's "prohibited personnel practices," the CSRA's administrative procedures are the employee's only remedy. *Orsay v. United States Dep't of Justice,* 289 F.3d 1125, 1128 (9th Cir. 2002) (abrogated on other grounds by *Millbrook v. United States*,

569 U.S. 50 (2013)); *see also Collins v. Bender,* 195 F.3d 1076, 1079 (9th Cir. 1999) ("[E]ven if no remedy were available to [the employee] under the CSRA, he still could not bring [his] action if the acts complained of fell within the CSRA's confines."); *Saul,* 928 F.2d at 835–43 (holding the CSRA precludes both constitutional and common-law tort claims). As another court in this District previously ruled, "[b]ecause the CSRA does not provide a private cause of action, Plaintiff's only recourse for remedying the alleged CSRA violations is through the CSRA's administrative procedures by filing a complaint with the Office of Special Counsel." *Wilborn v. Napolitano*, No. 11-CV-2252-IEG RBB, 2012 WL 354494, at *6 (S.D. Cal. Feb. 2, 2012).

Wilborn's constitutional claims are thus barred by the doctrine of sovereign immunity and precluded by the CSRA. *See Wilborn v. Napolitano*, No. 11-CV-2252-IEG RBB, 2013 WL 1222061, at *3 (S.D. Cal. Mar. 25, 2013), *aff'd sub nom. Wilborn v. Johnson*, 592 F. App'x 571 (9th Cir. 2015) (dismissing with prejudice Wilborn's constitutional claims "to the extent Plaintiff seeks damages as barred by the doctrine of sovereign immunity and precluded by the CSRA"). Because the factual and legal grounds proffered in support of Wilborn's constitutional claims make it clear that he has no right to relief from this defendant in any capacity, granting further leave to amend would be futile or result in undue delay. *Flowers v. First Hawaiian Bank*, 295 F.3d 966 (9th Cir. 2002). Accordingly, the Court **DISMISSES** Wilborn's constitutional claims for monetary damages against Secretary Mayorkas in his official or personal capacity.[2]

---

[2] Wilborn suggests in his Opposition briefs that he may be alleging constitutional violations under 42 U.S.C. § 1983. (Dkt. 44 ¶ 24; Dkt. 45 ¶¶ 9, 11). But as Defendant correctly points out, Section 1983 claims are limited to violations made by state actors—not the United States or federal officials—and any such claim must necessarily be dismissed. *See Morse v. N. Coast Opportunities, Inc.,* 118 F.3d 1338, 1343 (9th Cir. 1997) (finding the plaintiff's complaint "invalid on its face

### B. Title VII Claims

Wilborn also appears to bring claims under Title VII of the Civil Rights Act of 1964, alleging that CBP's "adverse action of discipline," namely his suspension and failure to be promoted, were motivated by race discrimination. (FAC ¶¶ 24, 29–30). He additionally alludes to a hostile work environment claim based on a comment made to him by a colleague, (*id.* ¶ 86 ("[L]ine supervisor SLECA [Raul] Stamp stated that the Plaintiff 'should stop acting like a pussy and grow a set of balls' . . ."), as well as a retaliation claim based on an October 2014 letter regarding a 10-day suspension proposal sent from his superior which references a prior suspension deemed retaliatory by the EEOC and also a subsequent change made to his established work schedule following that favorable EEOC decision (*id.* ¶¶ 37, 85).

Wilborn fails to sufficiently allege that he was discriminated against because of his race. Under Title VII, employers are not permitted to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII discrimination claim, a plaintiff must first establish a *prima facie* case of discrimination. *See Vasquez v. County of Los Angles,* 349 F.3d 634, 640 (2004). A plaintiff may establish a *prima facie* case by showing (1) he belonged to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Here, Wilborn claims he was discriminated against because he is African American, (FAC ¶¶ 29–30), but as Defendant argues, Wilborn fails to

---

in its reliance upon § 1983 as a cause of action against alleged federal government actors").

establish a link between his race and any adverse action taken against him. Indeed, the FAC explains that the basis for the disciplinary action taken against him in October 2014 was his "lack of candor," and while he attempts to argue that other "similarly situated Caucasian employees" were not similarly written up or suspended, he offers no other facts to support these conclusory allegations. *See Twombly*, 550 U.S. at 556 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .") (internal quotations marks and alterations omitted); *see also Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) ("What is missing for each theory of liability are sufficient, nonconclusory allegations plausibly linking the disciplinary action to discrimination on the basis of [race]."). Nor can any race discrimination claim based on an alleged failure to promote survive where Wilborn hasn't demonstrated that he exhausted his administrative remedies by filing a complaint alleging Title VII violations with the Equal Employment Office of his agency. *See Wilborn v. Napolitano*, No. 11-CV-2252-IEG RBB, 2012 WL 354494, at *7 (S.D. Cal. Feb. 2, 2012) (quoting *Sommatino v. United States,* 255 F.3d 704, 709 (9th Cir. 2001)) ("In cases where a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, the district court does not have jurisdiction over Plaintiff's Title VII claims.") (internal quotation marks omitted).

Wilborn can't maintain a claim for hostile work environment either. To prevail on a hostile work environment claim under Title VII, a plaintiff must establish that the workplace was "permeated with discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65–67 (1986)) (internal quotation marks omitted). To determine whether conduct was sufficiently severe or pervasive to violate Title VII,

the Court must look to all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, whether it is a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *See Vasquez v. County of Los Angles,* 349 F.3d 634, 642 (2004) (internal citations and quotation marks omitted). In this case, the conduct Wilborn complains about—an offensive verbal comment, a schedule change, a proposed suspension, and placement on an EPP—is not the type of conduct that rises to the level of hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee would not affect the conditions of employment to sufficiently significant degree to violate Title VII.") (internal citations and quotation marks omitted). And more importantly here, Wilborn fails to explain how such conduct is at all related to the race discrimination he claims he experienced. *Vasquez,* 349 F.3d at 642.[3]

---

[3] To the extent Wilborn also alleges a constructive discharge claim, that claim fails. "[A] constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo,* 229 F.3d 917, 930 (9th Cir. 2000)) (internal quotation marks omitted). "This 'aggravated' claim arises when plaintiff 'presents a worst case harassment scenario, harassment ratcheted up to the breaking point.'" *Torres v. Nat'l Frozen Foods Corp.*, No. 6:20-CV-01680-MC, 2021 WL 1740245, at *5 (D. Or. May 3, 2021) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 131 (2004)). Nothing of the sort is alleged here.

Finally, Wilborn cannot maintain a claim for retaliation. In order to establish a *prima facie* case of retaliation under Title VII, Wilborn must show involvement in a protected activity, an adverse employment action, and a causal link between the two. *Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002). Defendant argues that Wilborn's retaliation claims must be dismissed because he fails to sufficiently demonstrate that any of the alleged actions taken against him were retaliatory in nature. (Dkt. 42 at 17). The Court agrees. The FAC is entirely unclear as to what protected activity Wilborn engaged in and for which he experienced retaliation. Wilborn vaguely identifies the 10-day suspension proposal issued by Agent Scudder as a basis for his claim. (FAC ¶ 28). He claims that Agent Scudder's letter referenced Wilborn's previous suspension from 2010—later deemed by an Administrative Judge to be retaliatory and made in connection with protected activity. (*Id.*). But Wilborn doesn't allege any facts suggesting that the purpose of Agent Scudder's suspension proposal was retaliation against Wilborn for his previous activity. Indeed, the letter states independent reasons justifying a 10-day suspension proposal, including Wilborn's "lack of candor" when confronted by superiors about a scheduling incident involving one of Wilborn's subordinates. (*Id.*, Ex. 10 at 1–2). And Wilborn's suggestion that a later change made to his schedule (i.e., switching him from the night shift to the day shift) was retaliation for the EEOC's decision in his favor is likewise unconvincing where Wilborn provides no context or explanation as to how such a change was at all connected to the EEOC's findings. (FAC ¶ 85). It is well established that "petty slights or minor annoyances" are not actionable. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."). Wilborn fails to sufficiently allege a retaliation claim with these threadbare allegations.

Wilborn's Title VII claims are thus **DISMISSED**.

## IV. CONCLUSION

Plaintiff's request to file a sur-reply is **DENIED** and Defendant's Motion to Dismiss is **GRANTED**. The Court recognizes that in civil rights cases, *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Rodriguez v. Chandler*, 86 F.3d 1163 (9th Cir. 1996) (citing *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). In this case, the Court previously provided Wilborn an opportunity to amend these pleadings and correct the deficiencies identified by Defendant in its motion to dismiss the original Complaint, but to no avail. The current amended complaint still fails to state viable causes of action against Defendant and includes only vague, conclusory, and confusingly-pled statements of Defendant's alleged wrongdoing. Because Wilborn has previously amended his complaint but has yet again failed to state any viable claims against Defendant, Wilborn's claims are **DISMISSED WITH PREJUDICE** and without leave to amend.

The Clerk of Court is ordered to terminate this case.

**IT IS SO ORDERED**.

Dated: October 28, 2021

*Larry A. Burns*
Honorable Larry Alan Burns
United States District Judge